1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARQUITA RENA WILLIAMS,

11              Plaintiff,                    No. 2:11-cv-2966 DAD

12        vs.

13   CAROLYN W. COLVIN,              ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's cross-

19   motion is denied, the decision of the Commissioner of Social Security (Commissioner) is

20   reversed, and the matter is remanded for further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22              On April 30, 2008, plaintiff filed an application for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income

24   (SSI) under Title XVI of the Act, alleging disability beginning on March 8, 2008.  (Transcript

25   (Tr.) at 10, 70-71, 129-35.)  Plaintiff's application for benefits was denied initially and upon

26   reconsideration.  (Id. at 76-79, 88-92.)  A hearing was held before an Administrative Law Judge

(ALJ) on December 16, 2009.  (Id. at 33-69.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on December 23, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 20.)  The ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since March 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3.  The claimant has the following severe impairment:  bipolar disorder, with psychotic features (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant can do simple, routine work involving 1 to 2 steps in a non-public setting; she can have occasional interaction with coworkers in a low stress setting defined as a setting with little to no change in the work routine from day to day; and she can do no fast paced production or quota driven type work.
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7.  The claimant was born on October 18, 1983 and was 24 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in

1    significant numbers in the national economy that the claimant can
     perform (20 CFR 404.1569, 404.1569(a), 416.969, and
2    416.969(a)).

3    11.  The claimant has not been under a disability, as defined in the
     Social Security Act, from March 8, 2008 through the date of this
4    decision (20 CFR 404.1520(g) and 416.920(g)).

5    (Id. at 12-20.)

6            On September 8, 2011, the Appeals Council denied plaintiff's request for review

7    of the ALJ's decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. §

8    405(g) by filing the complaint in this action on November 7, 2011.

9                                    **LEGAL STANDARD**

10           The Commissioner's decision that a claimant is not disabled will be upheld if the

11   findings of fact are supported by substantial evidence in the record as a whole and the proper

12   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

13   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

14   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

15   conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

16   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

17   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

18   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

19   (1971)).

20           A reviewing court must consider the record as a whole, weighing both the

21   evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

22   at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

23   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

24   substantial evidence supports the administrative findings, or if there is conflicting evidence

25   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

26   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

                                              3

improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff argues that the ALJ committed the following three principal errors in finding her not disabled:  (1) the ALJ improperly rejected the medical opinion of plaintiff's treating psychiatrist; (2) the ALJ improperly rejected both plaintiff's testimony own /////

1    and that of the lay witness; and (3) the ALJ failed to properly evaluate the impact of plaintiff's

2    obesity on her mental impairments.[1]

3    **I.    Medical Opinion**

4            Plaintiff first argues that the ALJ erred in rejecting the medical opinion of

5    plaintiff's treating psychiatrist without a legitimate basis for doing so.  (Pl.'s MSJ (Doc. No. 15)

6    at 10-12.[2])  In this regard, on March 16, 2009, Dr. Javid Iqbal, plaintiff's treating psychiatrist,

7    completed a Mental Assessment (Short Form) and a 245.7 Form: Medical Opinion Re: Ability to

8    do Work-Related Activities (Mental) form.  (Tr. at 526-31.)  Therein, treating physician Dr. Iqbal

9    expressed his opinion that plaintiff was limited in a number of areas of functioning, including

10   markedly limited in her activities of daily living, maintaining social functioning and maintaining

11   concentration, persistence or pace, and was experiencing repeated episodes of decompensation,

12   each of an extended duration.  (Id. at 527-28.)  Dr. Iqbal's opinion also indicated that plaintiff

13   was either seriously limited, unable to meet competitive standards, or had no useful ability to

14   function with respect to the mental abilities and aptitudes needed to do unskilled, semi-skilled

15   and skilled work, as well as to perform particular types of jobs.  (Id. at 530-31.)  Moreover, Dr.

16   Iqbal opined that plaintiff's impairments or treatment would cause her to be absent from work

17   more than four days per month.  (Id. at 531.)

18           In his decision the ALJ discussed Dr. Iqbal's opinion before essentially rejecting it

19   by affording it "very little weight."  (Id. at 17.)  Dr. Iqbal, however, was plaintiff's treating

20   psychiatrist.  Accordingly, his opinion was entitled to considerable weight.  The weight to be

21   given to medical opinions in Social Security disability cases depends in part on whether the

22

23           [1] The court finds the organization of the arguments found in plaintiff's motion for
     summary judgment to be, in large part, disjointed and confusing.  Accordingly, the court has
24   attempted to restructure the arguments found in plaintiff's motion in the clearest possible
     manner.  In this regard, although plaintiff's motion asserts five separate claims of error in the
     ALJ's decision, because several of those claims are related, they will be discussed together.

25

26           [2] Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

1  opinions are proffered by treating, examining, or nonexamining health professionals.  <u>Lester</u>, 81

2  F.3d at 830; <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight

3  should be given to the opinion of a treating source than to the opinion of doctors who do not treat

4  the claimant . . . ."  <u>Lester</u>, 81 F.3d at 830.  This is so because a treating doctor is employed to

5  cure and has a greater opportunity to know and observe the patient as an individual.  <u>Smolen v.</u>

6  <u>Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir.

7  1990).  A treating physician's uncontradicted opinion may be rejected only for clear and

8  convincing reasons, while a treating physician's opinion that is controverted by another doctor

9  may be rejected only for specific and legitimate reasons supported by substantial evidence in the

10  record.  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester</u>, 81 F.3d at 830-31.

11          Here, the ALJ rejected treating psychiatrist Dr. Iqbal's opinion, in part, because

12  Dr. Iqbal opined that plaintiff had repeated episodes of decompensation.  Specifically, the ALJ

13  observed in his decision that "repeated episodes of decompensation . . . means three episodes

14  within 1 year," but that here the record showed "arguably two episodes of decompensation."  (<u>Id.</u>

15  at 17.)  The form completed by Dr. Iqbal, however, does not provide an explanation of what

16  constitutes repeated episodes of decompensation.  Instead, the form the doctor completed simply

17  provides a check box next to the phrase "Repeated Episodes of Decompensation, Each of

18  Extended Duration."  (<u>Id.</u> at 528.)  Moreover, the ALJ's decision acknowledged that plaintiff

19  experienced, at least arguably, more than one episode of decompensation.  The court does not

20  find this basis for rejecting Dr. Iqbal's entire medical opinion to be a legitimate reason supported

21  by substantial evidence.

22          The other reason offered by the ALJ in rejecting Dr. Iqbal's opinion was the

23  ALJ's conclusion that it was "not supported by treatment records."  (<u>Id.</u> at 17.)  Here, the ALJ

24  found that the evidence "certainly does not indicate 'constant interruption'" in plaintiff's life and

25  accused Dr. Iqbal of "exaggerat[ing] the claimant's symptom's."  (<u>Id.</u>)

26  /////

1

> To say that medical opinions are not supported by sufficient
> objective findings or are contrary to the preponderant conclusions
> mandated by the objective findings does not achieve the level of
> specificity . . . required, even when the objective factors are listed
> seriatim.  The ALJ must do more than offer his conclusions.  He
> must set forth his own interpretations and explain why they, rather
> than the doctors', are correct.

2

3

4

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  See also Reddick, 157 F.3d at 725;

Alatorre v. Astrue, No. CV 12-0746 SS, 2013 WL 424727, at *8 (C.D. Cal. Feb. 1, 2013) (the

ALJ's finding that a medical opinion was "too restrictive" and not supported by "social security

rules and regulations" constituted "mere conclusions, with no citation to record evidence" and

thus were not "specific or legitimate reasons for rejecting" the opinion).

Moreover, it must be remembered that,

> [t]he primary function of medical records is to promote
> communication and recordkeeping for health care personnel – not
> to provide evidence for disability determinations.  We therefore do
> not require that a medical condition be mentioned in every report
> to conclude that a physician's opinion is supported by the record.

Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007).

Viewing the evidence of record in this case in its entirety, however, there appears

to be ample support for Dr. Iqbal's findings therein.  In this regard, on March 11, 2008, plaintiff

was admitted to the John George Psychiatric Pavilion at the Alameda County Medical Center due

to "voices, delusions [and] suicidal statements." (Tr. at 208.)  At that time plaintiff was assessed

with a GAF score of 25.[3]  (Id.)  Plaintiff was subsequently discharged from the hospital on March

/////

/////

---

[3]  A GAF score represents a present rating of overall psychological functioning on a scale
of 0 to 100.  See DIAGNOSTIC AND STATISTICAL MANUAL OF DISORDERS, at 30-31 (Am.
Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV").  See also Keyser v. Commissioner Social Sec.
Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's
psychological, social, and occupational functioning used to reflect the individual's need for
treatment.").  A GAF score of 21-30 indicates "[b]ehavior is considerably influenced by
delusions or hallucinations OR serious impairment in communication or judgment . . . OR
inability to function in almost all areas . . ." DSM-IV at 32.

7

1  14, 2008 with a GAF of 55.[4]  (Id.)

2  Just a few days later, on March 18, 2008, plaintiff was assessed at the Solano

3  County Mental Health Department and was diagnosed as suffering from bipolar disorder and as

4  having a GAF of 45.[5]  (Id. at 519.)  Dr. Iqbal began treating plaintiff on March 24, 2008.  (Id. at

5  507.)  On February 26, 2009, plaintiff was noted as suffering from "depressed mood" and "panic

6  disorder - anxiety- fear" and again assessed with a GAF of 45.  (Id. at 470.)  Finally, on March 9,

7  2009, plaintiff complained to Dr. Iqbal that she was "still feeling depressed and fearful."  (Id. at

8  469.)

9  In rejecting Dr. Iqbal's opinion, the ALJ found it "significant" that Dr. Iqbal "did

10  not prescribe therapy" and concluded that "[i]f the claimant's limitations and impairment were as

11  marked and disabling as indicated by Dr. Iqbal, it would seem that he would have ordered more

12  aggressive treatment."  (Id. at 16-17.)  However, the record establishes that in an effort to treat

13  plaintiff's limitations and impairments, her treating psychiatrist prescribed her medications.  It is

14  not clear that therapy could be properly characterized as a more aggressive treatment then the

15  medications plaintiff was prescribed.  Moreover, plaintiff's mother testified at the administrative

16  hearing that plaintiff "[c]an't get talk therapy" because plaintiff's insurance does not provide

17  coverage for "talk therapy."  (Id. at 57.)  See Orn, 495 F.3d at 638 ("disability benefits may not

18  be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of

19  funds.") (citation omitted).

20  For all of the reasons stated above, the court finds that plaintiff is entitled to

21  summary judgment in her favor with respect to her claim that the ALJ's decision to reject the

22  opinion of her treating psychiatrist was not supported by substantial evidence.

23

24  [4]  A GAF score of 51-60 indicates "[m]oderate symptoms . . . OR moderate difficulty in
social, occupational, or school functioning . . ."  DSM-IV at 32.

25

26  [5]  A GAF score of 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in
social, occupational, or school functioning . . ."  DSM-IV at 32.

**CONCLUSION**

1

2        With error established, the court has the discretion to remand or reverse and award

3  benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose

4  would be served by further proceedings, or where the record has been fully developed, it is

5  appropriate to exercise this discretion to direct an immediate award of benefits.  See Benecke v.

6  Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  However, where there are outstanding issues

7  that must be resolved before a determination can be made, or it is not clear from the record that

8  the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated,

9  remand is appropriate.  Id. at 594.

10       Here, when the opinion evidence of plaintiff's treating psychiatrist is given the

11  proper weight, the evidence of record demonstrates that plaintiff was disabled when plaintiff's

12  treating psychiatrist, Dr. Iqbal, rendered his opinion on March 16, 2009.  In this regard, a

13  Vocational Expert ("VE") testified at plaintiff's December 16, 2009 administrative hearing.

14  When asked at the hearing a hypothetical question that included the limitations indicated by Dr.

15  Iqbal's opinion, the VE testified that an individual suffering from those limitations would be

16  precluded from working.  (Tr. at 66-67.)  Thus, the ALJ erred in concluding that plaintiff had not

17  been under a disability at any time from March 8, 2008 through December 23, 2009, the date of

18  the ALJ's decision.

19       However, while it is clear that plaintiff was under a disability as of March 16,

20  2009, it is not clear from the record before the court if the date of onset of disability is March 16,

21  2009, or sometime prior thereto.[6]  See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010)

22  (affirming remand to determine onset date where ALJ did not address the issue and evidence in

23  the record did not establish onset date); Regennitter, 166 F.3d at 1300 (finding claimant disabled

24  but remanding for determination of onset date); Armstrong v. Commissioner, 160 F.3d 587, 590

25  ───────────────────

26  [6] As noted above, in her application for Disability Insurance Benefits and for
Supplemental Security Income, plaintiff alleged an onset date of disability of March 8, 2008.

9

(9th Cir. 1998) (Where, after reviewing the record, the court found it unclear when the claimant's

disabilities became disabling the case was remanded with instruction to determine when the

claimant became disabled).

Accordingly, the court will remand the matter for further administrative

proceedings consistent with this order and solely for the limited purpose of determining the

correct date of onset of plaintiff's disability.[7] See Widmark v. Barnhart, 454 F.3d 1063, 1065

(9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision

that the ALJ improperly rejected an examining physician's opinion); see also Benecke v.

Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) ("the district court should credit evidence that was

rejected during the administrative process and remand for an immediate award of benefits if (1)

the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no

outstanding issues that must be resolved before a determination of disability can be made; and (3)

it is clear from the record that the ALJ would be required to find the claimant disabled were such

evidence credited.").

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 15) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 17) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: March 29, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.soc sec/williams2966.order

---

[7] In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error.